## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHANTEE DACOSTA,<br><br>                 Plaintiff,<br><br>     v.<br><br>THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA d/b/a PENN MEDICINE; PENN PRESBYTERIAN MEDICAL CENTER; and SUNNE FRANKEL (*individually*)<br><br>              Defendants. | Civil Action No. 2:25-cv-4364<br><br>**PLAINTIFF DEMANDS A TRIAL BY JURY** |

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

Plaintiff, SHANTEE DACOSTA, (hereinafter referred to as "Plaintiff"), by and through Plaintiff's attorneys, DEREK SMITH LAW GROUP, PLLC, as and for Plaintiff's Complaint in this action against Defendant THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA d/b/a PENN MEDICINE (hereinafter referred to as "Defendant PENN MEDICINE"), Defendant PENN PRESBYTERIAN MEDICAL CENTER (hereinafter referred to as "Defendant PRESBYTERIAN"), and Defendant SUNNE FRANKEL, *in her individual and official capacity*, (hereinafter referred to as "Defendant FRANKEL"), (collectively hereinafter referred to as "Defendants") upon both information and belief, alleges as follows:

## NATURE OF THE CASE

1. This case involves a qualified Nurse Assistant who was subjected to pregnancy

discrimination and retaliation in violation of Title VII of the Civil Rights Act. Shortly after disclosing her pregnancy, Shantee DaCosta was pressured by her supervisor to resign, denied accommodations for medically necessary absences, and disciplined despite providing valid doctor's notes. When Ms. DaCosta sought protected leave, her requests were delayed, mishandled, and ultimately ignored in clear violation of federal and state law. Defendants allowed unlawful bias to drive employment decisions, retaliated against protected activity, and created a hostile work environment that constructively forced Ms. DaCosta from her job.

2. Plaintiff brings this action charging that Defendants violated Plaintiff's rights pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"); and the Pennsylvania Human Relations Act, as amended, 43 P.S. §§ 951, et seq. ("PHRA").

3. Plaintiff seeks damages to redress the injuries she has suffered as a result of Defendants' collective unlawful actions.

## JURISDICTION AND VENUE

4. The Court has subject matter jurisdiction over this action pursuant to Federal Question Jurisdiction, 28 U.S.C. §§ 1331, and supplemental jurisdiction, 42 U.S.C. §2000e-5(f)(3), and §1367.

5. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as all actions and omissions giving rise to the litigation occurred in the Eastern District of Pennsylvania.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6.      On November 29, 2024, Plaintiff timely dual-filed charges of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") setting forth Defendant's violations of Title VII and the PHRA.

7.      On or around June 11, 2025, the EEOC issued Plaintiff a Notice of Right to Sue within 90 Days.

8.      This action is being commenced within ninety (90) days of Plaintiff receiving the above-referenced Notice of Right to Sue.

9.      Plaintiff has complied with all administrative prerequisites to bring this lawsuit.

## **PARTIES**

6.  Plaintiff SHANTEE DACOSTA (hereinafter also referred to as "Plaintiff") is a female who resides in the Commonwealth of Pennsylvania.

7.  At all times material, Defendant THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA d/b/a PENN MEDICINE is a domestic nonprofit corporation established pursuant to the laws of the Commonwealth of Pennsylvania and is otherwise authorized to do business in the Commonwealth of Pennsylvania.

8.  At all times material, Defendant PENN PRESBYTERIAN MEDICAL CENTER is a subsidiary of Defendant PENN MEDICINE and is otherwise authorized to do business in the Commonwealth of Pennsylvania.

9.  At all times material, Defendant PENN MEDICINE and Defendant PENN PRESBYTERIAN MEDICAL CENTER (collectively referred to herein as

"Defendant PENN") were Plaintiff's joint and/or sole employer. Defendant PENN maintained the ability to modify Plaintiff's employment, including but not limited to changing Plaintiff's hours, work assignments, work schedule, and work location, as well as both entities maintained the ability to hire and/or fire Plaintiff.

10. At all relevant times, Defendant PENN has been continuously doing business across the Commonwealth of Pennsylvania and has continuously held at least 15 employees for all relevant calendar years. *42 U.S.C. § 2000e(b).*

11. Defendants PENN's exact number of employees is unknown to Plaintiff, but upon information and belief, there are well more employees than the statutory minimum.

12. At all times material, Defendant PENN MEDICINE has a corporate headquarters located at 3451 Walnut Street Room 310, Philadelphia, Pennsylvania 19104.

13. At all times material, Defendant PRESBYTERIAN operates a place of business at 51 North 39th Street, Philadelphia, Pennsylvania 19104.

14. At all times material, Defendant SUNNE FRANKEL (hereinafter referred to as "Defendant FRANKEL") is a Nurse Manager at Defendant PRESBYTERIAN.

15. At all times material, Defendant FRANKEL maintained supervisory authority over Plaintiff.

## **MATERIAL FACTS**

16. Plaintiff was hired by Defendant PRESBYTERIAN on or about November 13, 2023, as a Nurse Assistant.

4

17. In Spring 2024, Plaintiff became pregnant.

18. In May 2024, Plaintiff advised Defendant FRANKEL of her pregnancy.

19. About May 16, 2024, Plaintiff went to the Lankenau Medical Center Emergency Department for pregnancy-related nausea and vomiting.

20. At the Emergency Department, Plaintiff was diagnosed with Covid-19, automatically putting her out of work for two weeks per Defendant PENN's Covid-19 policy.

21. Plaintiff submitted a doctor's note to Defendant FRANKEL.

22. On May 28, 2024, the nausea and vomiting worsened, forcing Plaintiff to go to Everest Urgent Care.

23. The urgent care prescribed anti-nausea medication and recommended that Plaintiff not return to work until June 10, 2024. They further recommended that she remain out of work for longer, but advised that Plaintiff needed to see her Ob/gyn.

24. On June 10, 2024, Plaintiff received a phone call from Defendant FRANKEL.

25. During this phone call, Defendant FRANKEL told Plaintiff that it would be best to resign due to her pregnancy.

26. Plaintiff felt very uneasy by this call.

27. On June 11, 2024, Plaintiff emailed Defendant FRANKEL that she did not want to resign and requested other options.

28. Plaintiff requested FMLA leave with disability management but was denied as she had not been at Defendant PENN for more than a year.

29. Defendant PENN advised that she could apply for other forms of medical leave, but Plaintiff could not complete the forms until she saw her Ob/Gyn.

30. On June 16, 2024, Plaintiff went to Lankenau Medical Center's Emergency Department for pregnancy related nausea and pain. She again received a doctor's note excusing her absence until June 19, 2024.

31. On June 18, 2024, Plaintiff saw her Ob/Gyn at PENN MEDICINE.

32. Plaintiff was prescribed more medication and received another doctor's note for her absences.

33. Plaintiff returned to work on June 26, 2024.

34. Upon information and belief, the entire nursing administration knew of Plaintiff's pregnancy at this time because they had been informed by Defendant FRANKEL.

35. Despite Plaintiff sending in doctor's notes to excuse her medical absences, Plaintiff was written up.

36. During the time Plaintiff was back at work, she began to develop pelvic issues due to the physical activities of her job as a nursing assistant.

37. Plaintiff returned to her OB/GYN on July 16, 2024. Her OB/GYN noticed that Plaintiff could no longer move her legs or walk properly, so they recommended that Plaintiff request Short Term Disability.

38. Plaintiff officially requested Short Term Disability on July 19, 2024.

39. During this time, Plaintiff was still receiving harassing phone calls from Defendant FRANKEL about resigning from her position.

40. Even though Plaintiff had doctor's notes for extended absences, Plaintiff was forced by Defendant FRANKEL to call the office every day to inform her of her absence.

41. On July 22, 2024, Plaintiff faxed her medical leave form paperwork to her OB/GYN to be filled out.

42. Plaintiff followed up with her OB/GYN on August 2, 2024 regarding her medical leave paperwork. She was advised that they did not receive the documents until June 30, 2024.

43. During this time, Plaintiff received more doctor's notes to excuse herself from work due to the extreme pain of her pelvic issues.

44. Plaintiff was able to get her medical documentation together and submitted it to disability management on August 23, 2024.

45. On August 23, 2024, Plaintiff received a letter of approval for her Short Term Disability. The letter stated that the determined date of her disability started on July 16, 2024.

46. On August 27, 2024, Plaintiff called out per Defendant FRANKEL's protocol.

47. Defendant FRANKEL told Plaintiff that HR had mailed her a letter stating that if Plaintiff did not come in to work that day, she would be terminated.

48. Plaintiff advised that she had a doctor's note and that her doctor's office was still in the process of signing the disability paperwork.

49. Plaintiff had also never received the letter from HR.

50. On August 28, 2024, Plaintiff received multiple emails from Defendant PRESBYTERIAN MEDICAL that Defendant FRANKEL had put three disciplinary actions on Plaintiff's HR record.

51. One of the disciplinary actions was for a minor infraction that had occurred several months prior.

52. Per Defendant PENN's disciplinary policy, Plaintiff was supposed to have received an oral warning for the minor infraction. Instead, Defendant PRESBYTERIAN MEDICAL went straight to a written warning and a meeting.

53. The other two disciplinary actions were from Plaintiff's medically necessary absences.

54. Plaintiff had provided doctor's notes for all absences.

55. Plaintiff had never received any contact from Human Resources prior to this.

56. Instead, Plaintiff's sole contact was Defendant FRANKEL who continually advised Plaintiff to resign because of her pregnancy.

57. Plaintiff trusted her employers, Defendant PRESBYTERIAN MEDICAL and Defendant PENN, to ensure a work environment free from harassment and to protect her from same.

58. Yet instead, Plaintiff was harassed by Defendant FRANKEL due to her pregnancy.

59. Plaintiff felt violated as a direct and proximate result of Defendants' conduct, but perhaps more disturbingly, she believed resisting the unlawful and unwelcome harassment was not useful. Therefore, Defendants' willful and reckless unlawful

actions in this matter have a chilling effect not only on Plaintiff, causing her further harm, damages, and injury, but have a chilling effect which would reverberate throughout the system if not addressed.

60. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

61. As a result of the acts and conduct complained of herein, Plaintiff has suffered and the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

62. That as a result of Defendants' conduct, the Plaintiff was caused to sustain serious and permanent personal injuries, including but not limited to permanent psychological injuries.

63. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against all the Defendants jointly and severally.

64. Plaintiff further claims aggravation, activation and/or exacerbation of any preexisting condition.

65. Plaintiff claims that Defendants unlawfully discriminated against Plaintiff because of her gender and because she opposed the unlawful conduct of Defendants related to the above protected classes.

66. Plaintiff further claims constructive and/or actual discharge to the extent Plaintiff is terminated from Plaintiff's position as a result of the unlawful discrimination and retaliation.

67. The above are just some examples of some of the discrimination and retaliation to which Defendants subjected Plaintiff to on a continuous and on-going basis throughout Plaintiff's employment.

68. The Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

69. Plaintiff claims alternatively that Plaintiff is an Independent Contractor, and Plaintiff makes all applicable claims for the above conduct and facts under the applicable law pertaining to Independent Contractors. Furthermore, in such case, Plaintiff claims that Defendant owed and breached its duty to Plaintiff to prevent the harassment, discrimination, and retaliation and is liable therefore for negligence.

70. Plaintiff claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

<u>**COUNT I**</u>
**Pregnancy Discrimination in Violation of**
**Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.**
**(*against Corporate Defendants only*)**

71. Plaintiff, Shantee DaCosta, repeats and realleges every allegation made in the above paragraphs of this complaint.

72. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 provides in relevant part:

"It shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

*42 U.S.C. § 2000e-2(a)(1).*

73. Title VII further provides that "it shall be an unlawful employment practice for any employer . . . controlling . . . training or retraining, including on-the-job training programs to discriminate against any individual because of [her] race, color, religion, sex, or national origin in admission to, or employment in, any program established to provide. . . training." *42 U.S.C. § 2000e-2(d).*

74. In 1978, Congress enacted the Pregnancy Discrimination Act, 92 Stat. 2076, which added new language to Title VII's definitions subsection to specify that Title VII's "ter[m] 'because of sex' . . . include[s] . . . because of or on the basis of pregnancy, childbirth, or related medical conditions . . . women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k); <u>Young v. United Parcel Serv., Inc.</u>, 135 S. Ct. 1344-45 (2015) (explaining "that the denial of an accommodation constituted disparate treatment under the Pregnancy Discrimination Act.").

75. Title VII further provides that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

76. Defendants engaged in unlawful employment practices prohibited by Title VII by intentionally discriminating against Plaintiff with respect to her compensation, terms, conditions, training and privileges of employment because of her sex and pregnancy.

77. Defendants subjected Plaintiff to adverse tangible employment actions—defined as a material change to the terms of Plaintiff's employment once she became pregnant.

78. Plaintiff's protected characteristics (sex and pregnancy) played a determinative factor in Defendants' decisions to disproportionately scrutinize and discipline Plaintiff.

79. Defendants cannot show any legitimate nondiscriminatory reasons for their employment practices and any reasons proffered by Defendants for their actions against Plaintiff are pretextual and can readily be disbelieved.

80. Alternatively, Plaintiff's protected status as a pregnant woman played a motivating part in Defendants' decisions even if other factors may also have motivated its actions against Plaintiff.

81. Defendants acted with the intent to discriminate.

82. Defendants acted upon a continuing course of conduct.

83. As a result of Defendants' violations of Title VII, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

## COUNT II
**Hostile Work Environment in Violation of**
**Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq**
***(against Corporate Defendants only)***

86. Plaintiff, Shantee DaCosta, repeats and realleges every allegation made in the above paragraphs of this complaint.

87. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 provides in relevant part:

> "It shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

> *42 U.S.C. § 2000e-2(a)(1).*

88. Title VII also prohibits hostile work environment harassment, defined as unwanted comments or conduct regarding the Plaintiff's protected characteristics that have the purpose or effect of unreasonably interfering with the terms and

conditions of the Plaintiff's employment. <u>Harris v. Forklift Systems</u>, 510 U.S. 17 (1993).

89. Defendants, in their capacity as Plaintiff's supervisor, intentionally discriminated against Plaintiff in the terms and conditions of her employment on the basis of Plaintiff's sex/pregnancy.

90. Defendant PENN delegated the authority to control Plaintiff's work environment to Defendant FRANKEL.

91. Defendant FRANKEL abused that authority to create a hostile work environment.

92. At all times material, Defendants' intentional, sex and pregnancy-motivated discrimination was not welcomed by Plaintiff.

93. At all times material, the intentional, sex and pregnancy-motivated discrimination by Defendants was so severe or pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile or abusive.

94. At all times material, Plaintiff believed her work environment to be hostile or abusive as a result of Defendants' discriminatory conduct.

95. The hostile work environment alleged herein unreasonably interfered with Plaintiff's work performance.

96. The hostile work environment alleged herein was so extreme that it resulted in material changes to the terms and conditions of Plaintiff's employment.

97. Defendant PENN provided a futile avenue for complaint.

98. Defendants retaliated against Plaintiff for her complaints.

99. Defendants acted upon a continuing course of conduct.

100.    Defendants' unlawful actions towards Plaintiff were intentional, willful, and made with reckless indifference to Plaintiff's federally protected civil rights.

101.    As a result of Defendants' violations of Title VII, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

## COUNT III
### Unlawful Retaliation in Violation of
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.
### (*against Corporate Defendants only*)

102. Plaintiff, Shantee DaCosta, repeats and realleges every allegation made in the above paragraphs of this complaint.

103. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be an unlawful employment practice for an employer: "to discriminate against any of his employees…because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any matter in an investigation, proceeding, or hearing under this subchapter."

104. Title VII's anti-retaliation provision also protects employees who speak out about discrimination by answering questions during an employer's internal investigation. Crawford v. Metropolitan Gov't of Nashville and Davidson Cty., Tennessee, 555 U.S. 271, 277 (2009) (declaring that there is "no reason to doubt

that a person can 'oppose' by responding to someone else's question just as surely as by provoking the discussion, and nothing in the statute requires a freakish rule protecting an employee who reports discrimination on her own initiative but not one who reports the same discrimination in the same words when her boss asks a question.").

105. Retaliation need not be job-related to be actionable under Title VII. An employer can effectively retaliate against an employee by taking actions not directly related to her employment or by causing her harm outside the workplace. Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 58, 64 (2006)(rejecting authority from the Third Circuit and others requiring that the Plaintiff suffer an adverse employment action in order to recover for retaliation).

106. "[A] Plaintiff need not prove the merits of the underlying discrimination complaint, but only that '[s]he was acting under a good faith, reasonable belief that a violation existed.'" Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1085 (3d Cir. 1996); Sumner v. United States Postal Service, 899 F.2d 203, 209 (2d Cir. 1990).

107. Title VII not only bars retaliation against the employee who engaged in the protected activity, it also bars retaliation against another employee if the circumstances are such that the retaliation against that employee might well dissuade a reasonable worker from engaging in protected activity. See Thompson v. North American Stainless, LP, 131 S. Ct. 863, 868 (2011).

16

108. Here, Defendant PENN, and its supervisory employees, discriminated against Plaintiff because of her protected activity under Title VII.

109. Plaintiff acted under a reasonable, good faith belief that her right to be free from discrimination on the basis of sex/gender was violated.

110. Plaintiff was subjected to materially adverse actions at the time or after the protected conduct took place.

111. Defendant PENN, and its supervisory employees, engaged in an unlawful discriminatory practice by retaliating and otherwise discriminating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

112. There was a causal connection between Defendant PENN, its supervisory employees, the materially adverse actions against Plaintiff, and Plaintiff's protected activity.

113. Defendant PENN, and its supervisory employees, actions were "materially adverse" because they were serious enough to discourage a reasonable worker from engaging in protected activity.

114. Defendant PENN, and its supervisory employees, acted upon a continuing course of conduct.

115. Plaintiff will rely on a broad array of evidence to demonstrate a causal link between her protected activity and the Defendant PENN, and its supervisory employees, actions taken against her, such as the unusually suggestive proximity in time between events, as well as Defendant PENN's supervisory employees'

antagonism and change in demeanor toward Plaintiff after Defendant PENN, and its supervisory employees, became aware of Plaintiff's protected activity.

116. As a result of the Defendant PENN, and its supervisory employees' violations of the Title VII, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

<u>**COUNT IV**</u>
**Disparate Treatment in Violation of**
**The Pennsylvania Human Relations Act, Pa. C.S.A. § 955**
***(Against all Defendants)***

117. Plaintiff, Shantee DaCosta, repeats and realleges every allegation made in the above paragraphs of this complaint.

118. The PHRA § 955(a) provides that it shall be an unlawful discriminatory practice:

(a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin, or non-job related handicap or disability or the use of a guide or support animal because of blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions, or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the service required.

119. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her sex and pregnancy with respect to the terms and conditions of her employment.

18

120. Plaintiff hereby makes a claim against Defendants under all applicable paragraphs of PHRA § 955.

121. Defendants engaged in unlawful employment practices prohibited by the PHRA by intentionally discriminating against Plaintiff with respect to their compensation, terms, conditions, and privileges of employment because of her sex and pregnancy.

122. Defendants subjected Plaintiff to adverse tangible employment actions – defined as significant changes in Plaintiff's employment status, discipline, and decisions causing significant changes in their employment benefits.

123. At all times material, Plaintiff was a pregnant woman.

124. At all times material Defendants had knowledge of Plaintiff's sex and pregnancy.

125. At all times material, Defendant FRANKEL held supervisory authority over Plaintiff with respect to her employment.

126. At all times material, Defendant PENN authorized Defendant FRANKEL to take tangible employment action against Plaintiff as an employee Defendant PENN.

127. As alleged herein, Defendant FRANKEL in their capacity as Plaintiff's supervisor, intentionally discriminated against Plaintiff with regard to the terms and conditions of her employment on the basis Plaintiff's sex and pregnancy.

128. At all times material, Defendants' discriminatory conduct was not welcomed by Plaintiff.

129. At all times material, Defendants' conduct towards Plaintiff was intentionally based upon Plaintiff's sex and pregnancy.

130. Defendants cannot show any legitimate, nondiscriminatory reasons for its employment practices and any reasons proffered by Defendants for their actions against Plaintiff are pretextual and can be readily disbelieved.

131. As alleged herein, Defendants' discriminatory and harassing actions towards Plaintiff because of sex and pregnancy are unlawful employment practices in violation of the Civil Rights Act of 1964.

132. Defendants' unlawful employment actions towards Plaintiff were intentional, willful, and made with reckless indifference to Plaintiff's federally protected civil rights.

133. Defendants acted upon a continuing course of conduct.

134. Defendant PENN is vicariously liable for the unlawful employment actions by Defendant FRANKEL against Plaintiff in the course and scope of their employment with Defendant PENN.

135. As a result of Defendants' unlawful discrimination against Plaintiff in violation of PHRA § 955, Plaintiff has suffered and continues to suffer emotional and financial harm.

## COUNT V
### Hostile Work Environment in Violation of
### The Pennsylvania Human Relations Act, Pa. C.S.A. § 955
### *(Against all Defendants)*

136. Plaintiff, Shantee DaCosta, repeats and realleges every allegation made in the above paragraphs of this complaint.

137. The PHRA also prohibits hostile work environment harassment, which consists of discriminatory conduct in the workplace that occurs because of a protected

characteristic (such as sex or pregnancy) and is sufficiently severe or pervasive to alter the conditions of employment and create an abusive or hostile working environment. The standard is judged from the perspective of a reasonable person of the same protected class. Hoy v. Angelone, 456 Pa. Super. 596 (Pa. Super. 1997).

138. The fifth and final element of a hostile work environment claim is *respondeat superior* liability. "Liability will exist where the employer knew or should have known of the harassment and failed to take prompt remedial action. Id. at 606.

139. Furthermore, an "employer is liable for the discriminatorily abusive work environment created by a supervisor if the supervisor uses his actual or apparent authority to further the harassment, or if he was otherwise aided in accomplishing the harassment by the existence of the agency relationship." Karibian v. Columbia University, 14 F.3d 773, 780 (2nd Cir.1994); see also Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998).

140. Here, Defendants' conduct (1) occurred because of Plaintiff's legally protected characteristic; and (2) was severe or pervasive enough to make a reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive.

141. First, the harassing conduct directly refers to Plaintiff's sex/gender. If Plaintiff had been a male she would not have been treated in the same manner.

142. Second, as Plaintiff's supervisor, Defendant FRANKEL had the authority and control over the working environment, and they abused that authority to create a hostile work environment. A reasonable female subjected to Plaintiff's working environment would believe Defendants' conduct was severe or pervasive enough to have altered the conditions of employment and render the working environment intimidating, hostile or abusive because Defendants' conduct culminated in Plaintiff experiencing an actual adverse employment action (termination/constructive discharge).

143. Since the hostile work environment resulted in Plaintiff's experiencing a "tangible employment action," which includes "discharge, demotion or undesirable reassignment," Defendants cannot raise an affirmative defense to her claims of employer vicarious liability based on delegation of authority. Burlington Industries v. Ellerth, 524 U.S. 742, 765 (1998) and Faragher v. City of Boca Raton, 524 U.S. 775, 808 (1998).

## COUNT VI
### Retaliation in Violation of the
### Pennsylvania Human Relations Act ("PHRA"), 42 Pa. Stat. Ann. § 951, et seq.
### (*Against all Defendants*)

144. Plaintiff, Shantee DaCosta, repeats and realleges every allegation made in the above paragraphs of this complaint.

145. The PHRA prohibits retaliation, making it an unlawful discriminatory practice:

(d) For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because

such individual has made a charge, testified, or assisted, in any manner, in any investigation, proceeding, or hearing under this act.

*43 Pa. Stat. Ann. § 955(d).*

146. Plaintiff engaged in protected activity under the PHRA including, but not limited to making formal and informal complaints concerning the discrimination she experienced based on her sex and pregnancy.

147. Plaintiff's protected activity and/or opposition to Defendants' unlawful employment practices was the motivating and/or determinative factor in Defendants' decision to take adverse employment action against Plaintiff.

148. The temporal proximity between Plaintiff's protected activity and Defendants' decision to take materially adverse employment action against Plaintiff is unusually suggestive of a retaliatory motive and gives rise to an inference of causation.

149. Defendants' adverse actions against Plaintiff occurred in retaliation for Plaintiff's prior protected activity and/or opposition to Defendants' unlawful employment practices,

150. These adverse actions were intentional, willful, and made with reckless indifference to Plaintiff's protected civil rights.

151. Defendants' retaliation for Plaintiff's prior protected activity is an unlawful employment practice in violation of the PHRA.

152. As a direct and proximate result of Defendants' retaliatory termination of Plaintiff's employment in violation of PHRA, Plaintiff has suffered and continues to suffer emotional and financial harm.

## COUNT VII
## Aiding and Abetting in Violation of the
## Pennsylvania Human Relations Act ("PHRA"), 42 Pa. Stat. Ann. § 955(e), et seq.
## (*Against all Defendants*)

153. Plaintiff, Shantee DaCosta, repeats and realleges every allegation made in the above paragraphs of this complaint.

154. PHRA § 955(e) provides that it shall be an unlawful discriminatory practice: "For any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice."

155. Pursuant to the provisions contained within the PHRA, both employers and individual employees can be held liable for retaliation under Pennsylvania Law. 43 Pa. Cons. Stat. § 955 (e). See also, Dici v. Pennsylvania, 91 F.3d 542, 552 (3d Cir. 1996).

156. Defendants collectively engaged in unlawful discriminatory practices in violation of PHRA § 955(e) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

157. As a direct and proximate result of the Defendants' collective retaliatory conduct in violation of the PHRA, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost

benefits.  Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

158. The Defendants' collective actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the PHRA, warranting the imposition of punitive damages in addition to compensatory damages.

159. Plaintiff demands punitive damages as against all Defendants, jointly and severally.

160. Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

161. The conduct of the Defendants deprived Plaintiff of their statutory rights guaranteed under the PHRA.

162. Plaintiff has been damaged by the illegal conduct of the Defendants.

## INJURY AND DAMAGES

As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of her career and the loss of a salary, bonuses, benefits, and other compensation which such employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, physical pain, humiliation, mental anguish, suffering, inconvenience, injury to reputation, loss of enjoyment of life, and

other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

### JURY DEMAND

Plaintiff Shantee DaCosta requests a jury trial on all issues to be tried.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Shantee DaCosta demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, including, but not limited to, all compensatory damages, emotional distress, punitive damages, liquidated damages, statutory damages, attorneys' fees and costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: July 31, 2025                **DEREK SMITH LAW GROUP, PLLC**
                                    *Counsel for Plaintiff*

                                    */s/ Ian C. Schenholm*
                                    Ian C. Schenholm, Esq.
                                    1628 Pine Street,
                                    Philadelphia, Pennsylvania 19103
                                    Tel: (267) 857-7337
                                    Fax: (215) 501-5911
                                    ians@dereksmithlaw.com